IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIANE FORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-1872-D |
| VS. | § | |
| | § | |
| UNITED PARCEL SERVICE, INC. | § | |
| (OHIO), | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Diane Ford ("Ford") has filed a motion to modify order on remand to include necessary findings to certify for appeal, so that she can take an interlocutory appeal of the court's decision denying her motion to remand. *See Ford v. United Parcel Serv., Inc. (Ohio)*, 2014 WL 4105965 (N.D. Tex. Aug. 21, 2014) (Fitzwater, C.J.) ("*Ford I*"). Concluding that Ford has failed to demonstrate that the court's decision in *Ford I* involves a controlling question of law as to which there is substantial ground for difference of opinion, the court denies the motion.

I

Ford's motion is based on the different outcomes of Judge Lynn's decision in *Richard v. Time Warner Cable Media, Inc.*, 960 F.Supp.2d 659 (N.D. Tex. 2013) (Lynn, J.), which granted a motion to remand, and the court's decision in *Ford I*,[1] which denied a motion to

_____

[1] Judge Lynn and the undersigned are judges of the same court. The undersigned will refer to himself as "the court" for ease of reference.

remand.  In denying Ford's motion to remand, the court noted her heavy reliance on *Richard*.

It stated in a footnote that, to the extent *Ford I* and *Richard* "are in tension, the court

respectfully disagrees with *Richard*." *Ford I*, 2014 WL 4105965, at *4 n.4.

Ford maintains that the court should modify its decision in *Ford I* to make the findings

under 28 U.S.C. § 1292(b) that are necessary to enable her to take an immediate interlocutory

appeal.  She posits that

> [t]he issue to be decided on appeal is the narrow legal question
> of whether the allegations in Plaintiff's Original Petition prevent
> this Court from exercising diversity jurisdiction over the action,
> and the effect, if any, of Plaintiff's declaration submitted during
> the remand briefing.

P. Mot. 3.  Ford contends that *Ford I* is not merely in tension with *Richard*, but is instead

"the polar opposite" of *Richard*.  *Id.*  She posits that "[t]he remand facts in that case, and its

procedural posture, were *identical to this one*, yet two respected jurists in this district have

reached totally opposite conclusions," *id.*, meaning that "there is not only 'substantial ground

for' difference of opinion; there actually is a substantial difference of opinion within this very

district," *id.*  Ford urges the court to consider that

> the issue involved is a critical question of law regarding federal
> court diversity jurisdiction affecting lawyers from both sides of
> the docket not merely in employment cases, but in all actions
> removed to the Northern District of Texas based on federal court
> diversity jurisdiction.   Annually, this affects hundreds of
> proceedings.

*Id.* at 1.

- 2 -

II

Because the court's reasons for denying the motion depend on an understanding of the background facts and pertinent holdings and reasoning of *Ford I* and *Richard*, the court begins by summarizing each case.

In *Ford I* the court denied Ford's motion to remand, concluding that defendant United Parcel Service, Inc. (Ohio) ("UPS") had demonstrated by a preponderance of the evidence that the amount in controversy exceeded the sum or value of $75,000, exclusive of interest and costs. *Ford I*, 2014 WL 4105965, at *5. The court noted that when a defendant seeks to remove on the basis of diversity jurisdiction, the federal court ordinarily determines the amount in controversy based on the specific "good faith" sum demanded by the plaintiff in her state court petition. *Id.* at *2. But it concluded that the allegation of Ford's petition—in which she sought all damages available, "provided, Plaintiff seeks a final judgment, exclusive of interest and costs, not to exceed $74,000," *id.* (quoting Pet. ¶ 65)—was not in good faith, and the sum claimed in her petition did not control, because Ford had purposefully contravened the Texas pleading requirements to avoid federal jurisdiction, *id.*

Because the sum claimed by Ford was not made in good faith, UPS was entitled to demonstrate by a preponderance of the evidence that the amount in controversy actually exceeded the jurisdictional minimum. *Id.* UPS could satisfy this requirement by showing that it was apparent from the face of Ford's petition that the claims were likely to exceed $75,000, or UPS could set forth "summary judgment type evidence" of facts in controversy that supported a finding of the requisite amount. *Id.* (quoting *Manguno v. Prudential Prop.*

*& Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).  The court concluded that UPS had satisfied this requirement by presenting evidence that supported a finding that the amount in controversy exceeded the jurisdictional threshold.  *Id.*  In Ford's petition, she pleaded for back pay, front pay, compensatory damages, punitive damages, and attorney's fees.  UPS introduced evidence that supported the finding that UPS's potential liability for back pay alone would be $57,050. *Id.* at *3.  The court found that "[w]hen Ford's claims for front pay, compensatory damages, punitive damages, and attorney's fees are also taken into account, it is more likely than not that the amount in controversy here exceeds the sum or value of $75,000, exclusive of interest and costs." *Id.*

The court held that, because UPS had proved that the amount in controversy more likely than not exceeded the jurisdictional amount, it was necessary for Ford to show that, as a matter of law, it was certain that she would not be able to recover more than the damages for which she had prayed in her state court petition. *Id.*  Because Ford did not seek to conclusively rebut any of the evidence that UPS had submitted, or to rely on a state statute precluding a recovery in excess of the amount pleaded, it was necessary for Ford to file a binding stipulation or affidavit with her petition. *Id.*  Instead, she relied on the allegations of her petition (contending that they were binding stipulations that precluded removal) and on her declaration, executed post-removal, in which she agreed to limit her recovery to $74,000. *Id.*

The court rejected Ford's reliance on the allegations of her petition.  In Texas, although pleadings are regarded as judicial admissions, they generally are no longer binding

- 4 -

judicial admissions if abandoned, superseded, or amended. *Id*. at *4.  Therefore, "[a]lthough the allegations of Ford's petition are binding judicial admissions for the time being, they will cease to be 'conclusive and indisputable judicial admissions' if she chooses to amend or supersede her petition, as the Texas rules give her considerable latitude to do." *Id.* (citing *Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995)).  The court concluded that, "[b]ecause the allegations of Ford's petition are only binding judicial admissions so long as they are not amended or superseded, they are not sufficient to constitute the kind of 'binding stipulation or affidavit' necessary to preclude removal." *Id.*

The court also concluded that Ford's reliance on her post-removal declaration was unavailing because she "failed to include [the] declaration with her petition and instead filed it with her reply to defendant's response to her motion to remand[.]" *Id.*  The court explained that, although a post-removal affidavit or declaration could be considered to clarify an otherwise ambiguous basis for jurisdiction, there was no such ambiguity here.  Therefore, the court was precluded from considering Ford's post-removal declaration as evidence of the amount in controversy or as a binding stipulation precluding removal.  *Id.*

In *Richard* "[t]he principal question raised by [the plaintiff's motion to remand was] whether [he had] effectively limited his potential recovery to an amount below the jurisdictional threshold."  *Richard*, 960 F.Supp.2d at 660.  The plaintiff, Ron Richard ("Richard"), brought suit under state law for disability discrimination, contending that his former employer failed to accommodate his disability and then terminated his employment. *Id.*  He sued to recover relief in the form of back and front pay (including benefits),

compensatory damages, punitive damages, reasonable attorney's fees and experts' fees, court costs, and pre- and post-judgment interest. *Id.* In his state court petition, Richard alleged that he "'affirmatively limit[ed] his potential recovery' to $74,000.00." *Id.* (quoting original petition) (bold font omitted). With his motion to remand, he "filed a declaration again purporting to limit his recovery to $74,000.00, and stating his intent to be bound by the limitation." *Id.*

Judge Lynn recognized that Richard could defeat federal subject matter jurisdiction if, from the face of the pleadings, it was apparent to a legal certainty that he could not recover an amount exceeding $75,000. *Id.* She noted that the sum that Richard sought in good faith was deemed to be the amount in controversy unless the defendant, as the removing party, could establish by a preponderance of the evidence that Richard would in fact recover more than $75,000, if successful. *Id.* As the court did in *Ford I*, she recognized that, if the defendant satisfied this burden, Richard could defeat diversity jurisdiction only by showing that he had legally bound himself to a recovery below the jurisdictional threshold. *Id.*

Judge Lynn then turned to two questions: first, whether the defendant had demonstrated by a preponderance of the evidence that Richard's claims, if successful, would in fact trigger a recovery exceeding $75,000; and, if so, second, whether Richard had effectively bound himself to an award below the jurisdictional threshold. *Id.* She found that the defendant had met its burden on the first question because the defendant's potential back pay liability was $85,473.21, meaning that Richard's "back pay claim alone establishe[d] a controversy exceeding the statutory threshold." *Id.* Therefore, the second

- 6 -

question—whether Richard had effectively bound himself to an award below the jurisdictional threshold—became dispositive. "[I]f Richard's attempt to limit his recovery to no more than $74,000.00 [was] not binding, then [the defendant's] removal was proper." *Id.* at 661-62.

Judge Lynn held that Richard had effectively limited his recovery. She began, as did the court in *Ford I*, by noting that, under Fifth Circuit law, if it appears from the face of the complaint that the amount in controversy exceeds the jurisdictional threshold, the plaintiff must be able to show, as a matter of law, that it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint; that to accomplish this, a plaintiff can file a binding stipulation or affidavit that limits his potential recovery to an amount less than $75,000; and that judicial admissions are binding on the party making them if they are made intentionally as a waiver. *Id.* at 662. She then concluded that, in Texas, stipulations in petitions that purport to limit prospective theories of recovery are binding judicial admissions, and that district courts in the Fifth Circuit have applied this reasoning to limit the amount of damages claimed. *Id.* She then reached the conclusion that is "in tension" with *Ford I*: she held that Richard's attempt to limit his recovery was similarly effective because he twice stated in his petition that he sought a judgment "not to exceed $74,000.00," *id.* (quoting original petition) (bold font omitted); he also claimed in the petition that the amount in controversy "[did] not exceed $74,000.00," *id.*; and he purported to "affirmatively limit [] his potential recovery accordingly," *id.* (quoting original petition) (bold font and italics omitted). Judge Lynn found that "such stipulations limiting Richard's

recovery bind him, and defeat diversity jurisdiction." *Id.*

Judge Lynn rejected the defendant's contentions that it was necessary for Richard to explicitly limit the amount he would accept (reasoning that affirmatively limiting one's recovery has the same effect as restricting what one will accept or collect), *id.* at 662-63, and that his petition was ambiguous, *id.* at 663-64.

Finally, Judge Lynn concluded that, even if the language in Richard's original petition was construed to create some uncertainty, his post-removal declaration resolved that uncertainty in his favor. *Id.* at 664. She noted, as did this court in *Ford I*, that courts can consider post-removal declarations that clarify an otherwise ambiguous basis for jurisdiction. *Id.* Therefore, even though Richard's post-removal declaration was not independently binding, she could consider it to the extent that it clarified any ambiguities in Richard's original petition, and the "Declaration erase[d] any doubt that, at the time of removal, Richard intended to bind himself to a recovery capped at $74,000.00, exclusive of interest and costs." *Id.* Judge Lynn found "that the unambiguous limitation in Richard's Original Petition, buttressed by his post-removal Declaration, effectively preclude[d] Richard from recovering more than $74,000.00, and prevent[ed] the Court from asserting diversity jurisdiction." *Id.*

III

Under 28 U.S.C. § 1292(b), a district judge can certify for immediate appeal an otherwise unappealable order when the judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion

and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"[2] At a minimum, Ford must demonstrate that the court's decision in *Ford I* involves a controlling question of law as to which there is substantial ground for difference of opinion.

The court concludes that Ford's reliance on *Richard* to satisfy this requirement of § 1292(b) is misplaced. To satisfy the prerequisites of § 1292(b), Ford must demonstrate that there is substantial ground for difference of opinion on the controlling question of law that *Richard* and *Ford I* present. Insofar as pertinent to Ford's motion, the only material difference between *Richard* and *Ford I*—the "tension" between them—is this: *Richard* held that the plaintiff had satisfied the legal certainty requirement by effectively binding himself to an award below the jurisdictional threshold through the allegations of his state court petition, *Richard*, 960 F.Supp.2d at 662; *Ford I* concluded that Ford had not satisfied her

---

[2]28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

legal certainty obligation because the allegations of her state court petition were not binding, and her post-removal declaration was untimely, *Ford I*, 2014 WL 4105965, at *4. Ford contends that the controlling legal question that supports an interlocutory appeal is "whether the allegations in Plaintiff's Original Petition prevent this Court from exercising diversity jurisdiction over the action, and the effect, if any, of Plaintiff's declaration submitted during the remand briefing." P. Mot. 3. The court prefers the following restatement of the controlling legal question, which it considers more precise: (1) When the sum claimed in the plaintiff's Texas state court petition is not controlling because it is not pleaded in good faith, (2) and the removing defendant proves by a preponderance of the evidence that the amount in controversy actually exceeds the jurisdictional minimum, (3) may the plaintiff rely on the allegations of the Texas state court petition alone to satisfy her obligation to show that, as a matter of law, it is certain that she will not be able to recover more than the damages for which she has prayed in the state court pleading?[3] Regardless whether the court formulates its own legal question or addresses Ford's, it concludes that this is not a legal question on which there is substantial ground for difference of opinion.

To understand why, the court turns to the Fifth Circuit's decision in *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995). *Ford I* and *Richard* both acknowledge the rule of

---

[3]In phrasing this question, the court assumes that no post-removal affidavit or declaration is needed to clarify an otherwise ambiguous basis for jurisdiction. In *Richard* Judge Lynn addressed Richard's post-removal declaration on the assumption that his original petition was "construed to create some uncertainty." *Richard*, 960 F.Supp. 2d at 664. In *Ford I* there was no ambiguity in the state court petition to be clarified by a post-removal affidavit or declaration.

*De Aguilar* that, when a removing defendant satisfies its burden of proving by a preponderance of the evidence that the amount in controversy actually exceeds the jurisdictional minimum, the plaintiff can defeat diversity jurisdiction only by showing that she has legally bound herself to a recovery below the jurisdictional threshold. *See Ford I*, 2014 WL 4105965, at *3; *Richard*, 960 F.Supp.2d at 661.

In *De Aguilar* the court held that, once a defendant shows that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided the plaintiff does not show that it is legally certain that her recovery will not exceed the amount stated in the state complaint. *De Aguilar*, 47 F.3d at 1412. At that point, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. *Id.* The *De Aguilar* panel explained that this is not a burden-shifting exercise, that the plaintiff must make all information known at the time she files the complaint, and that she may meet this "legal certainty" obligation several ways:

> Plaintiff's "legal certainty" obligation might be met in various ways; we can only speculate, without intimating how we might rule in such case. Plaintiff's state complaint might cite, for example, to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment. Absent such a statute, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, [*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)], makes later filings irrelevant."

*De Aguilar*, 47 F.3d at 1412 (quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (per curiam)). The Fifth Circuit has continued to apply this rule. "We further note that [the

- 11 -

plaintiff] was free, but failed, *to file a binding stipulation to the court prior to removal* indicating that she would seek no more than $75,000 in damages. Such a stipulation timely filed could have prevented removal." *Pollet v. Sears Roebuck & Co.*, 46 Fed. Appx. 226, 2002 WL 1939917, at *1 n.5 (5th Cir. 2002) (per curiam) (citation omitted) (emphasis added) (addressing removal from Louisiana state court). In sum, the law of this circuit is that a Texas plaintiff may not rely on the allegations of her state court petition alone to meet the legal certainty test when the sum claimed in the petition is not pleaded in good faith, unless, for example, she includes a citation to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment, or, at the time she files her petition in state court, she also files a binding stipulation or affidavit. On the controlling legal question in *Richard* and this case, there is no substantial ground for difference of opinion. *Ford I* correctly applies the law of this circuit, and, in the court's respectful view, *Richard* does not.

In her motion, Ford states that "[t]he *Richard* opinion cites Fifth Circuit and other district court precedent that appear to conflict with the Fifth Circuit's 1995 decision in [*De Aguilar*], a case this Court relied heavily on for its analysis and ruling in this case." P. Mot. 3 n.6. This argument does not support the conclusion that there is substantial ground for difference of opinion. It must be recalled that *Richard* itself treats *De Aguilar* as binding. *See, e.g., Richard*, 960 F.Supp.2d at 661. And because there is no indication that *De Aguilar* is no longer controlling in this circuit, the failure, if any, of other courts to follow *De Aguilar* simply means that there are courts that are not adhering to circuit precedent, not that there

is substantial ground for difference of opinion.

IV

In a reply brief that presents somewhat extensive arguments about why Ford believes that *Ford I* is wrongly decided, she takes certain positions that the court deems it advisable to address.

First, she contends that this court found in *Ford I* that she had not pleaded damages of $74,000 in good faith based on Tex. R. Civ. P. 47, but that the Rule no longer prohibits a party from pleading an amount of damages. She quotes the revised version of Rule 47 that took effect on March 1, 2013, asserting that nothing in the revised Rule prevented her from pleading a more specific amount. But the court in *Ford I* clearly relied on revised Rule 47(c), not the former Rule. *See Ford I*, 2014 WL 4105965, at *2. It pointed out that, as amended, Rule 47(c) requires that Texas plaintiffs plead in certain predefined damage ranges, and that there is no provision in Rule 47 permitting a plaintiff to plead for damages "not to exceed $74,000," as Ford did here. *Id.* And although Ford's assertion that revised Rule 47(c) permits her to plead a specific amount rather than a range seems to run directly counter to the Rule's mandatory terms, the court is bound by *De Aguilar*, the law of this circuit, unless and until it is changed. Accordingly, the court stands by its conclusion that the sum claimed by Ford was not made in good faith.

- 13 -

Second, Ford makes the related assertion that, if the court is correct that she is

> required to limit her pleading to the identical verbiage in new
> Rule 47 [this] would mean all actions where the parties are
> diverse would be removable, because the Plaintiff could never
> plead that the amount in controversy was less than the federal
> court jurisdictional limit.  No stipulation could cure this because
> the pleading would conflict with the stipulation.  This simply
> cannot be the law.

P. Reply 4 (bold font omitted).  The court disagrees.  Under the law of this circuit, a Texas

plaintiff is already permitted to meet the legal certainty test by pleading no specific sum of

damages in her state court petition, provided she files a binding stipulation or affidavit with

her petition, before removal.  She can certainly do so, for example, by alleging under Rule

47(c)(1) that she seeks "only monetary relief of $100,000 or less, including damages of any

kind, penalties, costs, expenses, pre-judgment interest, and attorney fees," and includes with

her petition the necessary stipulation or affidavit.

Third, Ford presents an extensive argument in support of the contention that *De

Aguilar* is no longer controlling and is not on point.  But because *Richard* and *Ford I* both

treat *De Aguilar* as binding circuit precedent, there is no difference between them in this

respect and therefore no basis to certify an interlocutory appeal.  Moreover, the statute that

Ford cites in support—the 2011 amendment to 28 U.S.C. § 1446—does not eliminate a good

faith standard.  *See* 28 U.S.C. § 1446(c)(2) (stating, with certain exceptions, that "the sum

demanded in good faith in the initial pleading shall be deemed to be the amount in

controversy").  And the Fifth Circuit, even after the adoption of the 2011 amendment,

continues to follow *De Aguilar*. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 398 n.8

(5th Cir. 2013) (stating that "[i]f the defendant seeks to remove on the basis of an initial pleading where the jurisdictional amount is not established, the removing defendant must demonstrate by a preponderance of the evidence that the jurisdictional amount is satisfied," (citing *De Aguilar*, 47 F.3d at 1409), and noting that "[i]n so determining, the court can rely on 'summary judgment-type' evidence to ascertain the amount in controversy" (quoting *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998))).[4]  Accordingly, although this argument presents a basis for Ford to appeal at the conclusion of the case, it does not support an immediate, interlocutory appeal.

## V

There are three points to be made in closing.

First, Ford's counsel appears to be concerned that identical pleading practices risk inconsistent rulings when cases are removed from Texas state court to this district.  But this is easily addressed.  When a plaintiff truly intends to limit the damages she seeks so that her case is not removable to federal court based on diversity of citizenship, she can file a Texas state court petition that complies with Rule 47(c) and at the same time file a binding stipulation or affidavit that complies with *De Aguilar*.

Second, Ford's counsel appears to take as a personal rebuke the conclusion in *Ford I*

---

[4]As recently as November 10, 2014 the Fifth Circuit cited *De Aguilar* as precedent. *See Scarlott v. Nissan N. Am., Inc.*, ___ F.3d ___, 2014 WL 5837046, at *5 (5th Cir. Nov. 10, 2014) (citing *De Aguilar* for proposition that "[t]he preponderance burden forces the defendant to do more than point to a state law that might allow the plaintiff to recover more than what is pled.  The defendant must produce evidence that establishes that the actual amount in controversy exceeds $50,000." (footnote omitted)).

that the sum claimed by Ford was not made in good faith.  *See* P. Mot. 4 n.7 (stating that "[t]he 'bad faith' finding is particularly troubling to undersigned counsel given that when Plaintiff filed her state court petition on March 20, 2014, it was done in no small measure in reliance on Judge Lynn's published opinion in *Richard*.  And again, both *Richard* and this action are the same procedurally, and undersigned counsel represented the plaintiffs in both actions, and drafted and filed identical petitions as to the amount in controversy.").  No such reproach was intended.  The court's reference to the absence of a "good faith" pleading was in accordance with the law of the circuit—indeed, this concept of "good faith" is found in amended § 1446(c)(2).  It was not a suggestion, for example, that Ford's counsel acted in subjective bad faith.

Third, as the court stated in *Ford I*, it "invariably gives serious and respectful consideration to the decisions of other judges of this court on questions of law—and typically follows them because they are usually correct and because predictability in such matters is desirable."  *Ford I*, 2014 WL 4105965, at *4 n.4 (quoting *SEC v. Cuban*, 798 F.Supp.2d 783, 788 (N.D. Tex. 2011) (Fitzwater, C.J.)).  The court holds Judge Lynn in the highest possible regard as an outstanding and valued colleague, and nothing in *Ford I* or this decision is intended to suggest otherwise.

\*   \*   \*

Accordingly, Ford's motion to modify order on remand to include necessary findings to certify for appeal is denied.

**SO ORDERED**.

November 20, 2014.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE